**FLUKE CORPORATION, Appellant,**

v.

**Gary LeMASTER and Larry LeMaster, Appellees.**

No. 2008–SC–000530–DG.

Supreme Court of Kentucky.

March 18, 2010.

Jill F. Endicott, Richard H.C. Clay, Dinsmore & Shohl, LLP, Louisville, KY, Counsel for Appellant.

Anthony David Blankenship, Mitchell Delbert Kinner, Robert Joseph Patton, Kinner & Patton, Prestonsburg, KY, Counsel for Appellees.

Opinion of the Court by Chief Justice MINTON.

## I. *INTRODUCTION.*

We accepted discretionary review in this products liability case to resolve whether the Court of Appeals properly adopted foreign authority and correctly held that equitable estoppel barred the product manufacturer's statute of limitations defense because the manufacturer allegedly concealed product defects from government regulatory agencies. We also address whether the holding of the Court of Appeals properly expanded the discovery rule beyond the classes of cases currently recognized by Kentucky law.

We conclude that the Court of Appeals erred by applying equitable estoppel to bar application of the statute of limitations because the product's potential role in causing the accident that gave rise to this litigation was immediately evident from the accident itself, and the manufacturer's alleged failure to disclose product defects to government agencies did not excuse the plaintiffs' failure to exercise reasonable diligence to discover their cause of action and the identity of the tortfeasor within the time prescribed by the statute of limitations. We also refuse to extend application of the discovery rule to cases not involving latent injuries, latent illnesses, or professional malpractice and conclude that the Court of Appeals erred to the extent that it applied the discovery rule under the circumstances presented here. Because we conclude that the Court of Appeals improperly adopted foreign authority clearly in conflict with binding Kentucky precedent and erred in its application of the law to the facts of this case, we reverse the Court of Appeals and reinstate the trial court's grant of summary judgment to the manufacturer.

## II. *FACTS.*

Neither side disputes the following facts as generally recited by the Court of Appeals. On April 25, 2000, Travis Arnett, who is not a party to this appeal, and Gary and Larry LeMaster—all employees of Eagle Electrical Contractors, Inc.—were dispatched to Typo Tipple, a coal processing facility owned by Leslie Resources, Inc. Leslie Resources employees reported to Eagle a suspected electrical failure at the facility. The facility's coal crusher unit would not start, and smoke was coming from the facility's motor control center.

Arnett and the LeMasters entered the control center of the crusher unit to check the circuit breakers. Arnett advised the Leslie Resources employees that he would have to shut off power in the building. The facility was then evacuated. At Arnett's instruction, Gary LeMaster disengaged the circuit breaker labeled "MAIN." The facility then lost lights and power to the remaining machinery. Arnett applied a hand-held voltage meter that showed that there was no electricity flowing to the crusher's unit breaker. Despite that reading, the unit was still energized. As Gary LeMaster held the flashlight, Arnett had just begun to work inside the cabinet housing the crusher breaker when an electrical arc blasted through the cabinet. Arnett suffered severe burns and permanently disabling injuries in the explosion. Arnett was also mentally incapacitated for several months following the explosion. Both of the LeMasters received less severe injuries.

The Court of Appeals noted that a federal government investigation of the accident included inspection of Arnett's hand-held voltage meter and found nothing wrong with it:

An investigation was conducted by the U.S. Department of Labor Mine Safety and Health Administration (MSHA), and Arnett's tools were removed from the site for examination. The inspection indicated that Arnett's voltage meter was in good working order following the explosion. MSHA's report concluded that the explosion occurred as a result of inadequate identification of the circuit breaker. Arnett's tools remained in the custody of MSHA.

Neither party disputes the accuracy of the recounting of the investigation or its conclusions as set forth by the Court of Appeals.

A year after the explosion, the three electricians—all represented by the same counsel—jointly sued Leslie Resources, alleging that its negligence had caused their injuries. Although their original complaint focused blame on Leslie Resources for improper wiring or identification of electrical components, the complaint also included an allegation that it had been Arnett's custom and practice to use a hand-held voltage meter as a precaution to retest the status of circuitry. Despite this recognition that voltage testing was or should have been used to test for the presence of voltage to prevent electrical accidents, apparently, at that time, the plaintiffs placed the sole blame for the explosion on Leslie Resources for its alleged negligence in wiring or in identifying electrical components because no other defendants were named or otherwise identified.[1]

---

1. Because the plaintiffs did not attempt to name any manufacturer of any equipment as a defendant in their original complaint but, rather, named only the premises owner as a defendant, the relation-back doctrine is not relevant to this action. *See* CR 15.03 (relation back of amendments), which states, in pertinent part:

(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

After Leslie Resources deposed Arnett in late August 2001, the plaintiffs began to shift a portion of the blame to Fluke Corporation, the manufacturer of Arnett's hand-held voltage meter. Arnett testified by deposition to having used an 87–III multimeter (an instrument for measuring voltage) manufactured by Fluke. He stated that the multimeter reported no voltage flowing to the area where the work would be done. Shortly after the deposition, counsel for plaintiffs presented the facts to a retired electrician who remembered a product recall of certain other Fluke products and suggested that perhaps the multimeter used on the day of the accident had malfunctioned. Apparently, a different type of instrument used to measure or detect voltage, a Fluke T2 electrical tester, was recalled in March 2001. Fluke contends the T2 was a much less sophisticated and less expensive instrument than the 87–III multimeter and that the T2 was marketed more toward the average consumer whereas the 87–III multimeter was a product aimed more at professional electricians.

The plaintiffs amended their complaint to name Fluke as a defendant in early September 2001. Fluke pled the statute of limitations as an affirmative defense. More discovery ensued. MSHA had taken custody of the voltage meter after the accident. According to a filing in the trial record, the LeMasters' attorney took custody of the voltage meter from MSHA in June 2002, which was approximately nine months after the LeMasters brought Fluke into the lawsuit. The record does not disclose when the plaintiffs requested custody of the meter for their investigation. Although the LeMasters draw this Court's attention to the fact that the meter was in MSHA's hands for some time, they do not seem to assert that the meter's remaining in MSHA custody was a predominant reason they did not file suit against Fluke within the statute of limitations.

Sometime during the course of discovery, Arnett revealed that he had been aware of a low-battery indicator on his Fluke 87–III multimeter for about four weeks before the explosion. Despite the low-battery signal, Arnett continued to use the multimeter without replacing the battery. When re-deposed by Fluke, he admitted that he had read the instruction manual for his 87–III multimeter. The instruction manual was later admitted into evidence and was shown to contain a warning advising that "[t]o avoid possible electric shock or personal injury, follow these guidelines: .... Replace the battery as soon as the battery indicator (+ =) appears."

The plaintiffs sought to admit into evidence Fluke's internal memoranda that apparently showed that someone reported problems with measuring voltage correctly when 87–series multimeters (although not specifically the 87–III) were used in low-battery status and, thus, suggested having the multimeter turn itself off when used in low-battery status. The plaintiffs also submitted correspondence from the Consumer Product Safety Commission (CPSC) to Fluke (dated 2002—after the amended

original pleading, the amendment relates back to the date of the original pleading.
(2) An amendment changing the party against whom a claim is asserted relates back if the condition of paragraph (1) is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (a)

has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

complaint here was filed) reprimanding Fluke for not disclosing defects related to another series of multimeters (not the 87 series or 87–III).

Fluke filed motions for summary judgment based on the statute of limitations. In the course of extensive briefing permitted by the trial court, the LeMasters argued that their claims were timely filed by operation of the discovery rule and principles of equitable estoppel. They argued that Fluke had failed to comply with duties to report consumer product hazards as required by the Consumer Product Safety Act. The plaintiffs acknowledged in filings with the trial court that they were aware that the multimeter used by Arnett was manufactured by Fluke at the time of the accident, but they argued that they had no reason to suspect the multimeter malfunctioned until they were informed of recalls of other Fluke products. They also contended that Fluke had fraudulently concealed known defects in the meter used or in similar meters by failing to report them publicly.

Fluke argued that the LeMasters should have reasonably surmised that either Arnett had not used the multimeter correctly or that the multimeter had malfunctioned at the time of the accident because, obviously, the crusher remained energized even after the main breaker was disengaged.

The trial court granted a motion in limine filed by Fluke to exclude evidence of recalls of its unrelated products. The trial court ultimately determined that in regard to Arnett, the statute of limitations was tolled during the period of his mental disability ending in September 2000. So the trial court found that Arnett's claims against Fluke were timely filed, and the resolution of Arnett's claims is not before us now.[2] But as to the LeMasters' claims, the trial court ultimately granted summary judgment in favor of Fluke based on the statute of limitations.

The Court of Appeals vacated the trial court's summary judgment, finding instead that Fluke was equitably estopped from relying on the statute of limitations because it had failed to comply with a duty to report consumer product hazards under the Consumer Product Safety Act as the Alaska Supreme Court similarly reasoned in *Palmer v. Borg–Warner*.[3]

### III. *ANALYSIS.*

The larger question before us is whether the trial court properly granted summary judgment and, thus, whether the Court of Appeals erred in reversing the trial court's grant of summary judgment to Fluke. In answering this question, we are mindful that "[t]he standard of review for summary judgments is whether the trial court correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law."[4]

In reviewing the summary judgment granted by the trial court in this case, it is apparent that the parties essentially agree on the facts about what happened and

---

**2.** Arnett's claims eventually proceeded to trial where the jury returned a verdict in his favor against Fluke, although the jury also found Arnett partially at fault and Leslie Resources primarily at fault. Fluke appealed the judgment against it, but the appeal was dismissed when Fluke and Arnett reached a settlement.

**3.** 838 P.2d 1243 (Alaska 1992) (applying equitable estoppel based upon failure to comply with statutory duties of disclosure in highly regulated industry of aircraft manufacture).

**4.** *Lach v. Man O'War, LLC,* 256 S.W.3d 563, 567 (Ky.2008), *citing Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky.1991).

when it happened but dispute whether, given these largely agreed-upon facts, Fluke was entitled to judgment as a matter of law based on the statute of limitations. Because we agree with the trial court that based upon these largely undisputed facts, the LeMasters' claims were barred by the statute of limitations and that Fluke was entitled to judgment as a matter of law, we conclude that the Court of Appeals erred in reversing the trial court's grant of summary judgment.

No one disputes that the plaintiffs' personal injury claims were subject to a one-year statute of limitations.[5] So the action had to be filed within one year after the cause of action accrued in the absence of some justification for tolling the running of the statute of limitations. The LeMasters were injured in the explosion in late April 2000 but did not file suit against Fluke until early September 2001. Unless the cause of action did not immediately accrue upon the injurious explosion or unless the running of the statute of limitations is tolled for some reason, their action was barred under the statute of limitations. The trial court obviously found no reason why the LeMasters' cause of action would not immediately accrue and no reason to toll the running of the statute of limitations.

But the Court of Appeals reversed the summary judgment finding that the record showed that Fluke should be equitably estopped from relying on the statute of limitations on grounds of its purported failure to comply with duties of disclosure imposed by the Consumer Product Safety Act. The Court of Appeals referred in its analysis to the discovery rule and seemingly concluded that the LeMasters' claims were timely filed under the discovery rule since the LeMasters had not heard of any previous problems with Fluke voltage meters and, thus, had no reason to suspect that meter malfunction may have caused the accident until they heard a different Fluke voltage-measuring product had been recalled.[6] We conclude that the discovery rule was not applicable in the instant case and that the Court of Appeals erred in determining that equitable estoppel operated to deprive Fluke of its statute of limitations defense under the facts of this case.

A. *Discovery Rule Did Not Apply Here.*

Despite the LeMasters' argument to the contrary, the discovery rule simply has no application to this case. As stated by the Court of Appeals, "[u]nder the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." But the discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses.[7]

---

5. KRS 413.140(1)(a) (providing that "action for an injury to the person of the plaintiff" is one that must "be commenced within one (1) year after the cause of action accrued.").

6. After concluding that Fluke was equitably estopped from relying on the statute of limitations, the Court of Appeals also stated: "Moreover, the LeMasters acted with due diligence under the circumstances. As soon as

they became aware that Fluke had produced defective meters and that it had a history of failing to make required reports to the Consumer Product Safety Commission, they acted promptly to test Arnett's voltage meter and to file this products liability action."

7. *See, e.g., Perkins v. Northeastern Log Homes,* 808 S.W.2d 809, 819 (Ky.1991) (answering question of whether discovery rule applied to

The LeMasters do not dispute that their injuries were immediately apparent. And they were aware at the time of the explosion that Arnett tested, or should have tested, for voltage with a voltage-measuring instrument, yet, an electrical explosion occurred. So despite their statements that they had not previously heard of voltage meters malfunctioning and trusted Fluke brand products, they should have reasonably suspected that the voltage meter was not working properly and investigated this possibility.[8] Even though the MSHA report indicated the meter was working properly, the fact that this agency saw fit to examine this meter makes clear that a malfunctioning meter was at least suspected as a potential cause of the explosion. And this suspicion should have reasonably prompted the LeMasters' own prompt, independent investigation of the voltage meter as a possible cause. Thus, the Court of Appeals erred by extending the discovery rule to this case.

### B. *Equitable Estoppel.*

■ Not only did the Court of Appeals err to the extent that it applied the discov-

cases involving latent diseases allegedly caused by construction defects in the affirmative and further clarifying that "we respond that in the circumstances presented the statute of limitations commences from the date the plaintiff knew or should have discovered 'not only that he has been injured but also that his injury may have been caused by the defendant's conduct.' "); *Louisville Trust Co. v. Johns–Manville Products Corp.*, 580 S.W.2d 497, 501 (Ky.1979) (first extending discovery rule from medical malpractice cases to other cases involving latent diseases); *Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky.1970) (adopting discovery rule for medical malpractice cases); *Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky.1971) (clarifying that under discovery rule adopted for medical malpractice cases in *Tomlinson*, "there should have been added to the rule in *Tomlinson* a further statement that the statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered."). *See also McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky.App.2000) (refusing to apply discovery rule to delay running of statute of limitations in a products liability action until plaintiff discovered identity of product manufacturer where product's role in causing injury (machinery hitting plaintiff's head) was immediately apparent: "Under Kentucky law, the discovery rule provides that a cause of action accrues when the injury is, or should have been, discovered. However, the discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries. A person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor. Application of the discovery rule under circumstances as in the case *sub judice* would defeat the very purpose of the limitations. As one court observed, 'logic dictates that such an exception is capable of swallowing the rule.' ") (footnotes omitted).

**8.** *See Hazel v. General Motors Corp.*, 863 F.Supp. 435, 438–39 (W.D.Ky.1994) (explaining why plaintiff's tort suit seeking damages from automaker for explosion caused by fuel tank defect, which was brought in federal court under federal diversity jurisdiction, was barred by statute of limitations because discovery rule did not apply to facts under Kentucky law: "In our case, Plaintiff knew that a fuel-fed automobile fire caused his injuries. In other words, the injury and the instrumentality causing the injury were obvious. Thus, though Plaintiff surmised all the relevant facts, he may not have perceived that a design defect was the cause of his injury or that he could maintain a legal action against Defendant. A statute of limitations, however, begins to run from the date of discovery of the injuries and what or who was responsible for them, not from the date the plaintiff discovered that he had a cause of action. *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky.1983). Had he consulted an attorney, Plaintiff undoubtedly could have learned about that more precise mechanism or defect, if one existed. Thus, under Kentucky's discovery rule Plaintiffs cause of action accrued at the time of the accident.") (footnotes omitted).

ery rule to the present facts, but it also erred in affirmatively holding that Fluke was equitably estopped [9] from relying on the statute of limitations. In doing so, it expanded this doctrine beyond Kentucky precedent to adopt an expansive view similar to that established by Alaska precedent in *Palmer v. Borg–Warner Corporation.*

 Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party:

> The essential elements of equitable estoppel are[:] (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and

(3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.[10]

To establish an equitable estoppel against Fluke, the LeMasters would have to show three things on their part: (1) lack of knowledge or means of knowledge of the truth; (2) reliance, in good faith, based on something Fluke did or did not do or state; and (3) resulting action or inaction on the LeMasters' part that somehow changes their position or status for the worse. Obviously, the LeMasters claim that the last two elements are met because they contend that their inaction by failing to file a complaint against Fluke within the statute of limitations was done in reliance upon Fluke's lack of statements disclosing meter defects. But the LeMasters cannot show they lacked the means of acquiring knowledge of the truth that the multimeter could have malfunctioned, which would render any actual reliance reasonable. Although the LeMasters may not have subjectively suspected fault on Fluke's part, the fact remains that they knew of the purported voltage testing, understood voltage not to be present, and knew that an electrical explosion occurred anyway.

---

9. Statutory estoppel clearly does not apply here since Fluke is not a resident of Kentucky. KRS 413.190 states:

 (1) If, at the time any cause of action mentioned in KRS 413.090 to 413.160 accrues against a *resident* of this state, he is absent from it, the period limited for the commencement of the action against him shall be computed from the time of his return to this state.

 (2) When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a *resident* of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction

shall not be computed as any part of the period within which the action shall be commenced. But this saving shall not prevent the limitation from operating in favor of any other person not so acting, whether he is a necessary party to the action or not.

(Emphasis added.)

10. *Sebastian–Voor Properties, LLC v. Lexington–Fayette Urban County Government,* 265 S.W.3d 190, 194–95 (Ky.2008), *quoting Weiand v. Bd. of Trs. of Kentucky Ret. Sys.,* 25 S.W.3d 88, 91 (Ky.2000), and *Electric and Water Plant Bd. of Frankfort v. Suburban Acres Dev., Inc.,* 513 S.W.2d 489, 491 (Ky.1974).

In addition to the problems with establishing their own reliance, the LeMasters could not establish the necessary elements regarding Fluke's conduct. As Fluke points out, the LeMasters do not claim that Fluke engaged in any affirmative conduct to misrepresent or conceal facts. For example, in no way is it alleged that Fluke concealed its identity as manufacturer of the multimeter or concealed the fact that an erroneous multimeter reading could have caused the accident. Rather, the LeMasters allege that Fluke failed to comply with duties to disclose defects under the Consumer Product Safety Act and, in so doing, engaged in material misrepresentation or fraudulent concealment to support a finding of equitable estoppel. Before the Court of Appeals decision in this case, however, there was no precedent in Kentucky for finding fraudulent concealment based solely upon such an alleged failure publically to disclose product defects to government agencies.

The Court of Appeals, however, concluded that Fluke was equitably estopped from relying on the statute of limitations based on its finding that Fluke had fraudulently concealed defects in its products through failure to report problems with meters to the CPSC. Applying the logic expressed in the *Palmer* case, the Court of Appeals decided:

> The elements of equitable estoppel have been met in this case. In light of the circumstances alleged by the LeMasters and supported by their discovery documents, it appears that the manufacturer indeed remained silent when it had an affirmative statutory obligation to report information relative to the safety of its product. We adopt the cogent reasoning of the Supreme Court

of Alaska and hold that parties are entitled to assume that a product is safe if there is no adverse information reported as required to indicate that it may pose a danger. Fluke would place a burden on the plaintiffs to inquire into any and every possible defect inherent in its product despite its own failure to disclose a known defect.

The LeMasters were surely not anticipating potential tortfeasors in utilizing the voltage meter. Arnett's meter was retrieved by federal officials and was examined; it was cleared as to defects. The cause of the explosion was initially attributed to another source altogether. The LeMasters' failure to inquire was wholly attributable to Fluke's fraudulent concealment of critical facts—facts peculiarly and uniquely within its knowledge as the manufacturer and distributor of the product.

Moreover, the LeMasters acted with due diligence under the circumstances. As soon as they became aware that Fluke had produced defective meters and that it had a history of failing to make required reports to the Consumer Product Safety Commission, they acted promptly to test Arnett's voltage meter and to file this products liability action.

■ Under this approach, the statute of limitations never starts to run against a consumer even when a consumer is immediately aware that the product caused an injury unless the product manufacturer has issued a recall or otherwise publicly disclosed defects to government agencies. This approach negates the plaintiff's duty to exercise reasonable diligence to investigate apparent possible causes of his injuries.[11] Contrary to the holding of the

---

11. *See McLain,* 16 S.W.3d at 326. ("A person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor."); *Hazel,* 863 F.Supp. at 439, *citing Burke v. Blair,* 349 S.W.2d 836, 838 (Ky.

Court of Appeals that "parties are entitled to assume that a product is safe if there is no adverse information reported as required to indicate that it may pose a danger[,]" we construe precedent from Kentucky courts to hold that plaintiffs have a duty to inquire into the safety of products where it is apparent from the facts that the product may have been a potential cause of an injury.[12] As stated by the Court of Appeals in an earlier case, "[i]n the products liability context, a potential plaintiff's awareness of an injury and of the instrumentality causing the injury is enough to trigger the limitations clock and to impose on the plaintiff the duty to discover the responsible parties."[13]

■ Here, the plaintiffs do not dispute that they knew that Arnett had used a Fluke voltage meter to ensure that voltage was off yet, obviously, there was still voltage flowing since the electrical explosion occurred. As the federal district court for the Western District of Kentucky has stated in construing Kentucky law: "An injured party has an affirmative duty to use

diligence in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim."[14]

Applying Kentucky law concerning the statute of limitations, the federal district court for the Western District of Kentucky rejected the plaintiff's argument that an automobile manufacturer's failure to comply with a statutory duty to report defects to a federal government agency equitably estopped it from relying on the statute of limitations where the plaintiff should have known to investigate the possibility of a fuel tank defect given the fuel tank explosion that injured him. The court stated:

Even if Defendant did conceal evidence of the gas tank's design defect, that would not distinguish our case from almost every products liability action in which defendants know or possess potentially harmful information that is withheld until litigation compels disclosure. Here, evidence of the cause of action was clearly discoverable from analysis of the instrumentality, and

1961) ("Plaintiff is under the duty to exercise reasonable care and diligence to discover whether he has a viable legal claim.").

**12.** *See McLain*, 16 S.W.3d at 326 (rejecting plaintiff's argument that statute of limitations should not run until he discovered identity of product manufacturer where product's role in causing injury was immediately apparent (machinery hitting plaintiffs head) and noting plaintiffs duty to investigate); *Reese v. General American Door Co.*, 6 S.W.3d 380, 383 (Ky. App.1999) (holding that relation back doctrine did not apply to save an otherwise tardy cause of action since plaintiffs knew they were injured by garage door, they had duty to investigate garage door, and statute of limitations was not tolled by their mere failure to identify the garage door manufacturer within statute of limitations where no improper concealment by manufacturer was alleged); *Burke*, 349 S.W.2d at 838 (recognizing in nonproducts liability personal injury action that plaintiff generally has "duty to exercise rea-

sonable care and diligence" while discussing how defendant might be estopped from relying on statute of limitations where defendant's fraudulent concealment has "prevent[ed] inquiry or elude[d] investigation" by the plaintiff); *McCollum v. Sisters of Charity of Nazareth Health Corp.*, 799 S.W.2d 15, 18 (Ky.1990) (medical malpractice case in which this Court implicitly recognized that plaintiff has duty to investigate when injury is known to exist: "In these five cases, death is the injury that put appellants on notice to investigate."). *See also Hazel*, 863 F.Supp. at 438–40 (construing Kentucky caselaw to place duty to investigate on plaintiff who knew that the cause of his injuries was a fuel-fed automobile fire).

**13.** *Reese*, 6 S.W.3d at 383, *citing Hazel*, 863 F.Supp. at 435.

**14.** *Hazel*, 863 F.Supp. at 440 (citations and internal quotation marks omitted).

Plaintiff failed to examine the instrumentality. If Defendant concealed information, its actions did not prevent this Plaintiff from learning enough to assess whether he should file a complaint.[15]

Similarly, in the instant case, even if Fluke had somehow concealed evidence of a defect in the meter, the possibility of meter malfunction (and cause of action against manufacturer) was evident from the facts of the incident; but the plaintiffs failed to investigate this possibility in a timely manner. Fluke's actions or inactions did not prevent the LeMasters from learning enough to assess whether they should sue Fluke.

Not only were the LeMasters not relieved of their duty to exercise due diligence, but the finding of the Court of Appeals that Fluke had affirmatively violated its duty of disclosure under the Consumer Product Safety Act likely involves improper fact-finding and a misapplication of law to the facts of this case.

The federal Consumer Product Safety Act (15 U.S.C. § 2051, *et seq.*) applies to consumer products.[16] The trial court made no finding that Arnett's multimeter was a consumer product. In finding that Fluke had duties to disclose potential problems with its meters, the Court of Appeals implicitly found that this voltage meter was a consumer product. In the alternative, perhaps the Court of Appeals meant that other, less sophisticated testers

manufactured by Fluke were consumer products, but the trial court had excluded evidence of the recalls of these other products. The trial court's decision to exclude this other-products evidence was not challenged on appeal. Yet the Court of Appeals does not point to any evidence of record to show that the meter used was a consumer product or that the manufacturer of such products was part of a highly regulated industry. Although Fluke has raised some doubts about whether the multimeter (allegedly an expensive, highly sophisticated instrument marketed to professional electricians for use in their work) Arnett used was really subject to disclosure requirements under the Consumer Product Safety Act, it is ultimately unnecessary and inappropriate for this Court to resolve whether this multimeter really was a consumer product regulated by the Consumer Product Safety Act.

Even assuming for the sake of argument that the multimeter was a consumer product and that Fluke violated duties under the Consumer Product Safety Act by not reporting potential problems with similar multimeters or other voltage-testing products to the CPSC, Kentucky law has not previously held that such failure excuses a plaintiff's duty to exercise due diligence to investigate or constitutes fraudulent concealment sufficient to invoke equitable estoppel where, as here, the product's potential role in causing an injury is immediately evident.[17] The federal

---

**15.** *Id.* at 439–40.

**16.** 15 U.S.C. § 2052(a)(5) states, in pertinent part, that: "The term 'consumer product' means any article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in

recreation, or otherwise; but such term does not include—(A) any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer...."

**17.** Perhaps a failure to comply with statutory or other duties of disclosure might constitute "concealment of material facts" satisfying that element of equitable estoppel in certain circumstances especially where it actually obscured a cause of action against a defendant.

district court in the *Hazel* case recognized this in response to a similar plaintiff's argument: "Plaintiff asks this Court to do what Kentucky courts have not yet done, namely to extend the protection to consumers a step further, to toll the statute of limitations based upon Defendant's duty to inform consumers of a dangerous defect." [18] The federal district court refused to extend Kentucky's tolling rules in such a manner, just as the Court of Appeals should have done here.

Instead of following Kentucky precedent, the Court of Appeals chose to follow the *Palmer* case, which we believe is distinguishable on its facts and inconsistent with Kentucky precedent. As the *Hazel* court recognized, *Palmer* is different from the instant case because the manufacturer in *Palmer* had allegedly made false representations concerning a product's defects. [19] In *Palmer*, the plaintiffs alleged that the defendant manufacturer had not just failed to disclose defects, but had affirmatively provided false or misleading information to government authorities:

> the Palmer estate alleged that Borg–Warner actively and deceptively cultivated the auto gas theory of causation (use of auto gas as the cause of carburetor failure), while concealing the true cause of carburetor failure from the public, the NTSB and the FAA. Otherwise stated, the Palmer estate alleged that Borg–Warner purposely placed false information in the public domain in order to divert suspicion away from it and onto the pilot of an aircraft for operating on auto gas. The estate further alleged that it did pursue an investigation reasonably available to it, including the NTSB report, but that Borg–Warner's false representations 'prevent[ed] an investigation [by the estate] from revealing any relevant results.' These allegations meet the reliance requirement of the equitable estoppel doctrine. [20]

Unlike the *Palmer* case, however, Fluke did nothing to obscure its product's potential role in causing an unfortunate accident. Even accepting that other causes may also have led to the explosion here, obviously, there was voltage present even though the multimeter showed otherwise. Even in the absence of any reports of defects to the CPSC or other agency and the MSHA's finding the meter to be in good working order, plaintiffs had enough information reasonably to suspect that the multimeter could have malfunctioned and, thus, failed to prevent the explosion. Unlike the *Palmer* plaintiffs, the LeMasters have not alleged that Fluke somehow actively presented false or misleading information to the public or any government agency, just that it did not publicly dis-

---

*See Roman Catholic Diocese of Covington v. Secter,* 966 S.W.2d 286, 290 (Ky.App.1998) (diocese's failure to comply with statutory duty to report child abuse held to constitute evidence of concealment supporting statutory (KRS 413.190) estoppel where this failure to disclose obscured cause of action for negligent retention and supervision of priest that diocese had known to have abused children). *See also Munday v. Mayfair Diagnostic Laboratory,* 831 S.W.2d 912, 914–15 (Ky.1992) (failure to comply with disclosure requirements under assumed name statute sufficient "concealment" for statutory estoppel because this failure to disclose prevented plaintiffs from naming proper defendants within statute of limitations). But equitable estoppel cannot be invoked when the plaintiff could not have reasonably relied on the defendant's failure to disclose because the product's potential role in causing injury was immediately apparent. *See Hazel,* 863 F.Supp. at 439–40.

18. *Hazel,* 863 F.Supp. at 440.

19. *See id.* at 441 n. 14 (noting false representations made by manufacturer in *Palmer,* 838 P.2d at 1250).

20. *Palmer,* 838 P.2d at 1250.

close alleged defects. Thus, the instant case is clearly factually distinguishable from *Palmer* because it simply does not present the same sort of alleged affirmative misconduct by the defendant.

Not only is *Palmer* factually distinguishable, but we simply do not agree with its legal reasoning. Despite our sympathy for those injured by products through no fault of their own, such injured parties have the duty to act diligently to investigate apparent possible causes of their injuries in order to pursue claims within the statute of limitations. Given this duty, the statute of limitations will begin to run immediately because delaying the accrual of the cause of action or tolling the running of the statute of limitations by operation of the discovery rule or the equitable estoppel doctrine is reserved for truly exceptional circumstances, such as where the injury itself is not immediately discoverable or the product's potential role in causing an accident is actively obscured by the defendant's concealment or false representations.

## IV. *CONCLUSION.*

For the foregoing reasons, the judgment of the Court of Appeals is reversed; and the summary judgment granted by the trial court in favor of Fluke is reinstated.

All sitting. All concur.