RENDERED: JUNE 13, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0249-DG


ANNETTE WILEY, INDIVIDUALLY AND AS                 APPELLANTS
ADMINISTRATRIX AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF
CHARLOTTE BLAIR; AND MELANIE JOY
PERSSON


                       ON REVIEW FROM COURT OF APPEALS
V.                           NO. 2021-CA-0544
                JEFFERSON CIRCUIT COURT NO. 20-CI-004734


MASONIC HOMES OF KENTUCKY, INC.            APPELLEE
D/B/A MASONIC HOME OF LOUISVILLE


**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>REVERSING AND REMANDING</u>**


In matters of statutory interpretation, no statute is construed to be retroactive "unless expressly so declared." KRS 446.080(3). In this case, a power of attorney executed by Charlotte Blair in 2019 was not signed in the presence of two disinterested witnesses as then required by statute. Following her June 2020 death, the legislature amended the statute to remove the two-witness requirement. The issue we resolve in this case is whether the

legislature's 2020 amendment to KRS[1] 457.050 may be construed as retroactive so as to validate Ms. Blair's 2019 power of attorney and, thereby, the contracts executed by her attorney in fact pursuant to that power of attorney. We hold that the statute is not given retroactive effect, and therefore reverse the Court of Appeals' opinion. We remand this matter to the Jefferson Circuit Court for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In April 2019, Blair executed a durable power of attorney ("POA") appointing her daughter, Annette Wiley, as her attorney in fact. The POA was notarized. Despite having entry lines for two witnesses, it was not signed by two witnesses. In December 2019, Blair was admitted to Masonic's long-term care facility, the Sam Swope Care Center. Wiley, purportedly as agent, signed the admission documents along with an alternative dispute resolution ("ADR") agreement which provided claims arising from Blair's time at the facility were to be resolved through mediation or arbitration, as needed. Blair resided at the facility until her death in June 2020.

Prior to execution of Blair's POA, the legislature enacted KRS Chapter 457, including KRS 457.050, effective in July 2018,[2] to require execution of a POA "in the presence of two (2) disinterested witnesses." KRS 457.050(1) (2018). Two years later, in July 2020, the legislature amened KRS 457.050 to

---

[1] Kentucky Revised Statutes.

[2] Act of Apr. 26, 2018, ch. 185, 2018 Ky. Acts 1620.

2

remove the two-witness requirement.[3]  The amendment was effective July 15, 2020.  KY. CONST. § 55.

In August 2020, Wiley, individually and as administratrix and personal representative of the Blair's estate, and Melanie Persson, Wiley's sister and Blair's other daughter (collectively "Wiley"), sued Masonic in Jefferson Circuit Court asserting claims of negligence; wanton, reckless or grossly negligent conduct; a breach by Masonic Homes of the admission agreement; general violations of the Kentucky Resident's Bill of Rights Act; statutory claims for wrongful death; claims for adult children loss of consortium; and violations of the Kentucky Consumer Protection Act.  Masonic alleged some of those claims were subject to the ADR agreement and moved to stay the proceedings and compel arbitration.  After a hearing on the validity of the ADR agreement, the circuit court held the POA was invalid because it failed to meet the requirements of KRS 457.050 and the 2020 amendment to the statute was not retroactive.  The ADR agreement, therefore, was unenforceable as the agreement was signed under an invalid power of attorney.

Masonic appealed.  In a divided opinion, the Court of Appeals reversed the circuit court's order denying Masonic's motion to compel arbitration.  The Court of Appeals held the POA was valid because another statute, KRS 457.060, provides, in relevant part,

> (1) A power of attorney executed in this state on or after July 14, 2018 is valid if its execution complies with KRS 457.050.

---

[3] Act of Mar. 27, 2020, ch. 41 § 42, 2020 Ky. Acts 153.

(2) A power of attorney executed in this state before July 14, 2018 is valid if its execution complied with the law of this state as it existed at the time of execution.

KRS 457.060(1)-(2). Because this statute was left unchanged during the 2020 amendments, the Court of Appeals determined that this fact, coupled with the alteration to KRS 457.050, suggested a clear legislative intent that KRS 457.050 is retroactive to July 14, 2018. Finding that the POA was valid because KRS 457.050 was retroactive, the Court of Appeals ruled that Wiley acted within her authority under the POA and arbitration is compelled by Masonic's ADR agreement.

Wiley sought discretionary review from this Court, which we granted.

## II.     STANDARD OF REVIEW

On appeal, the standard of review for statutory construction and a trial court's application of law on a motion to compel arbitration is *de novo*. *Pearce v. Univ. of Louisville*, 448 S.W.3d 746, 749 (Ky. 2014); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012); *see also Genesis Healthcare, LLC v. Stevens*, 544 S.W.3d 645, 649 (Ky. App. 2017) (applying *de novo* to a trial court's denial of a motion to compel arbitration).

## III.     ANALYSIS

"[A] party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping*, 376 S.W.3d at 590 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850 (Ky. 2004)). Masonic fails to meet its initial burden in establishing the

4

existence of a valid agreement to arbitrate because the POA was invalid at the time Wiley signed the ADR agreement.

## A. The POA was invalid at execution and at Blair's admittance.

At common law, the mode by which a principal might appoint an agent was flexible and a power of attorney would be enforced so long as the agreement was signed by the principal, or at her direction, and the principal intended to authenticate the agreement. *Ledford v. Hubbard*, 219 Ky. 9, 12-15, 292 S.W. 345, 347-48 (1927); *Irvin v. Thompson*, 7 Ky. (4 Bibb) 295, 297 (1816).

A POA is "a written, often formally acknowledged, manifestation of the principal's intent to enter into . . . a relationship with a designated agent." *Ping*, 376 S.W.3d at 591. In 2018, our legislature enacted the first comprehensive set of laws related to powers of attorney in KRS Chapter 457, also known as the Uniform Power of Attorney Act (2006), including KRS 457.050. The 2018 version of KRS 457.050 provided:

> (1) A power of attorney must be signed *in the presence of two (2) disinterested witnesses by the principal* or in the principal's conscious presence by another individual directed by the principal to sign the principal's name on the power of attorney. If signed in the principal's conscious presence by another individual, the reason for this method of signing shall be stated in the power of attorney.
>
> (2) A signature on a power of attorney is presumed to be genuine if the principal acknowledges the signature before a notary public or other individual authorized by law to take acknowledgements.

(emphasis added).

In April 2019, Blair executed a durable POA appointing her daughter, Wiley as her agent. No party disputes the POA failed to be signed in the presence of two disinterested witnesses. Pursuant to KRS 457.050 as it existed at the time and KRS 457.060,[4] the POA was invalid at its execution and without legal effect.

In December 2019, Wiley, acting under the invalid POA, signed agreements to admit Blair to Masonic's long-term care facility. Wiley also used the POA to sign Masonic's ADR agreement, which was not a requirement of Blair's admission. Had KRS 457.050 remained unchanged, we would have little difficulty holding that the invalid POA did not bind any of the claims against Masonic to arbitration. In addition, Blair died before the effective date of the 2020 amendments. By the time Wiley brought this action, however, KRS 457.050 had been amended and the two-witness requirement eliminated.

### B. The 2020 amendments to Chapter 457 were not retroactive.

The law of the Commonwealth states, "[n]o statute shall be construed to be retroactive, unless expressly so declared." KRS 446.080(3). Several examples exist of the General Assembly expressly providing retroactive application in statutes. *See e.g.* KRS 17.510(6)(b) ("[t]his paragraph shall be retroactive."); KRS 61.500 ("any agreement entered into pursuant to it may be made with retroactive effect to January 1, 1951, or any date thereafter."); KRS

---

[4] KRS 457.060(1) provided, "(1) A power of attorney executed in this state on or after July 14, 2018 is valid if its execution complies with KRS 457.050."

6

161.168(2) ("[t]he provisions of this subsection shall be retroactive to January 1, 2003.").

However, this Court may construe statutes to have retroactive application without express declaration when we are "*absolutely certain* the legislature intended such a result" or when the substance of the statute is remedial in nature and no new rights or duties are created. *Commonwealth Dep't of Agric. v. Vinson*, 30 S.W.3d 162, 168 (Ky. 2000) (emphasis added). For "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature." KRS 446.080(1). Masonic argues several 2020 amendments to Chapter 457 were retroactive based on the legislature's intent even though the legislature did not expressly declare the statutes to be retroactive.

"'To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning.'" *Pearce*, 448 S.W.3d at 749 (quoting *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008)). "[W]hen a statute is unambiguous, we need not consider extrinsic evidence of legislative intent and public policy." *Id.* (citing *Cnty. Bd. of Educ. v. S. Pac. Co.*, 225 Ky. 621, 9 S.W.2d 984, 986 (1928)). "However, if the statutory language is ambiguous, we will look to other sources to ascertain the legislature's meaning, such as legislative history and public policy considerations." *Id.* (citing *MPM Fin. Grp. Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky. 2009)). Since July 15, 2020, KRS 457.050 has stated:

> (1) A power of attorney shall be signed by the principal or in the principal's conscious presence by another individual directed by the principal to sign the principal's name on the power of attorney. If signed in the principal's conscious presence by another individual, the reason for this method of signing shall be stated in the power of attorney.
>
> (2) A signature on a power of attorney is presumed to be genuine if the principal acknowledges the signature before a notary public or other individual authorized by law to take acknowledgments.

The language of the statute is clear and unambiguous. No express declaration of retroactivity exists in KRS 457.050. However, Masonic contends that the ambiguity of retroactive application as applied to KRS 457.050 can be found in the broader statutory scheme, specifically in KRS 457.060(1) and KRS 457.460.

### 1. No absolute certainty of retroactivity for KRS 457.060(1).

KRS 457.060(1) states "[a] power of attorney executed in this state on or after July 14, 2018, is valid if its execution complies with KRS 457.050." Unlike the other provisions discussed in this opinion, KRS 457.060 was not amended in 2020, meaning we are unable to discern definitively whether the legislature, by its inaction, intended for the 2020 amendment to KRS 457.050 to apply to POAs executed after 2018 or whether the failure to change the date was merely an oversight. Ultimately, the statutory language is ambiguous because either the 2018 or 2020 version of KRS 457.050 could apply to KRS 457.060(1). If KRS 457.060(1) applies to the 2018 version of KRS 457.050 then the POA at issue is invalid. On the other hand, if KRS 457.060(1) applies to the 2020 version of KRS 457.050 then the POA is valid because Blair, the principal, signed it and a notary acknowledged her signature.

8

The ambiguity of which version of KRS 457.050 to apply to KRS 457.060(1) leads this Court to look beyond the plain and ordinary meaning of the words. For this Court to approve retroactive application for KRS 457.060(1) it must be "absolutely certain" the legislature intended the result. *Vinson*, 30 S.W.3d at 168. We stated in *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 560 (Ky. 2011), that "[l]egislative inaction [is] … a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." In order to determine the legislature's intent in this case, we look to legislative history and public policy considerations. *Pearce*, 448 S.W.3d at 749.

Evidence of legislative intent can be supported from legislative hearings held prior to the adoption of a law. *See Zuckerman v. Bevin*, 565 S.W.3d 580 586-87 (Ky. 2018) (referring to legislative hearings supporting economic benefits of proposed legislation); *UPS Airlines v. West*, 366 S.W.3d 472, 480-81 (Ky. 2012) (Scott, J., dissenting) (referring to legislative hearings to support legislature's intent in enacting a statute). When the Kentucky Senate Judiciary Committee considered a committee substitute to 2020 House Bill ("HB") 154, removing the two-witness requirement in KRS 457.050(1),[5] the following exchange occurred:

> **[Opening Remarks]**: … the Committee substitute as I understand it … deals with the power of attorney act that was enacted I believe two years ago. That was a uniform act but as enacted it only adopted … part of the act. It only adopted two sections of it and two sections

---

[5] The proposal to KRS 457.050 was: "A power of attorney shall [~~must~~] be signed [~~in the presence of two disinterested witnesses~~] by the principal or in the principal's conscious presence by another individual directed by the principal to sign the principal's name on the power of attorney."

were not adopted. And in addition, it imposed a requirement of having two witnesses for every power of attorney. Which is very awkward, [] I bought a car three months ago and the power of attorney that I was asked to sign did not comply with the new statute because it is too awkward...

**[Question]**: ... Does this bill completely take care of the power of appointment as it applies to POAs? Do we go back to the former method of not requiring two witness signatures, is that in here?

**[Answer]:** That is correct. That is my understanding, yes.

*Hearing on HB 154 in the Kentucky Senate Judiciary Committee,* (March 12, 2020) https://ket.org/legislature/archives/2020/regular/senate-judiciary-committee-162260 at 1:01:20-1:03:34 (last visited May 15, 2024).

The comments made during this hearing support the legislature's intent to amend KRS 457.050 to "go back" to the former method of not requiring the presence of two disinterested witnesses because of the logistical issue or "awkwardness" it creates in execution. In further support of the legislature's intent, several representatives during the hearing voiced approval of the amendment from the banking, auto, land and title industries. *Id.* As a public policy consideration, the hearing helps explain how the legislature intended for the amendment to help resolve logistical issues created from having to find two disinterested witnesses present during the execution of a POA. The comments also suggest the change in the amendment intended to return to the process in place before the 2018 amendment required the presence of two disinterested witnesses.

However, whether the legislature intended for the amendment to KRS 457.050 to retroactively make valid all POAs executed between July 14, 2018

10

and July 15, 2020, the 2020 legislation's effective date, is unclear. The hearing clearly established that the 2018 version of KRS 457.050 caused problems for individuals executing POAs across various industries in the Commonwealth. But no comments were made to suggest that the amendment systematically makes all POAs on or after July 14, 2018 valid if the POA was executed without the presence of two disinterested witnesses. Masonic provides no evidence, outside of the legislature's inaction in changing the statute, to support the legislature's intent to create such a result. As already noted, "[l]egislative inaction [is] … a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." *Brown*, 354 S.W.3d at 560 (citing *Brown v. Arp and Hammond Hardware Co.*, 141 P.3d. 673, 684 (Wy. 2006) (quoting from Norman J. Singer, *2B Statutes and Statutory Construction* § 49:10, p. 112-115 (6th ed. 2000)). Due to the lack of evidence to support the legislature's intent, we cannot be absolutely certain that the legislature intended KRS 457.060(1) to have retroactive application to make the alleged POA valid.

### 2. KRS 457.460 cannot retroactively save an already terminated POA.

Masonic also argues the 2020 amendment to KRS 457.050(1) is retroactive because KRS 457.460(1) states "[t]his chapter applies to a power of attorney created *before*, on, or after July 15, 2020." (emphasis added). This section appears to clearly apply to the POA at issue in this case, as the POA was executed before July 15, 2020. But the statute also states in another subsection, "an act done before July 15, 2020, is not affected by this chapter." KRS 457.460(4). This subsection also applies to this case because Wiley acted

11

under the authority of the invalid POA by entering into the ADR agreement. Once again, we face an issue of ambiguity because both KRS 457.460(1) and KRS 457.460(4) can apply to the POA.

Masonic argues Wiley is prohibited from raising the effect of KRS 457.460(4) on retroactivity because she failed to preserve the argument before the trial court. Typically, "[a] question not raised nor adjudicated in the circuit court will not be addressed by this court," *Benefit Ass'n of Ry. Emps. v. Secrest,* 239 Ky. 400, 39 S.W.2d 682, 687 (1931), but "[w]hen the facts reveal a fundamental basis for decision not presented by the parties, [] our duty [is] to address the issue to avoid a misleading application of the law." *Mitchell v. Hadl,* 816 S.W.2d 183, 185 (Ky. 1991). The effect of KRS 457.460(4) is instructive in considering retroactive application of KRS Chapter 457 because it addresses the issue of an application of law.

"In interpreting a statute, '[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (quoting *Cosby v. Commonwealth,* 147 S.W.3d 56, 59 (Ky. 2004)). Here, KRS 457.460(1) applies to the POA because it existed before July 15, 2020. KRS 457.460(4) also applies because the "act" at issue in this case is Wiley using the authority of the POA to sign the ADR agreement. KRS Chapter 457 does not define the "act" in this context. *See* KRS 457.020. But it does define an agent as "a person granted authority to act." *Id. See e.g. Jackson v. Legacy Health Servs., Inc.,* 640 S.W.3d 728, 731 (Ky. 2021) (citing *Ping,* 376

12

S.W.3d 581) (holding a voluntary pre-dispute arbitration agreement not binding on a ward if the guardian does not have the appropriate authority to enter agreement). An agent entering an agreement on behalf of a principal is an "act" under its literal meaning and "as an elementary matter of agency law." *Mr. Roof of Louisville, LLC v. Estate of Henry*, 681 S.W.3d 115, 119 n.8 (Ky. 2023).

We also take note of the words of the statute's title, "[e]ffect on *existing* powers of attorney." KRS 457.460 (emphasis added). The title is relevant because the Blair POA did not exist at the time this law was enacted. An agent's authority under a durable POA terminates when "[t]he principal dies." KRS 457.100. Blair, the principal, died before the passage of the 2020 amendment to KRS 457.460.[6] Any "existing" POA in effect at the time of execution terminated before KRS 457.460 was amended in 2020. Because the invalid Blair POA terminated before the 2020 amendment to KRS 457.460 became law, the statute cannot possibly retroactively save the POA. As stated in KRS 457.460 "[e]xcept as otherwise provided in this chapter" this alleged POA ceased to exist upon Blair's death.

In sum, the alleged POA was invalid at its execution under the 2018 version of KRS 457.050. We are not absolutely certain the legislature intended to retroactively apply KRS 457.060(1) to all existing POAs because not enough evidence supports such a result. Lastly, the POA is invalid because it was terminated before the passage of the 2020 version of KRS 457.460 and the

---

[6] Blair died on June 18, 2020, and the 2020 amendment to KRS 457.050 became law on July 15, 2020.

statute cannot retroactively save a POA that no longer exists. For these reasons, no statute in KRS Chapter 457 provides retroactive application to make this POA valid.

## C. *Appellants are not estopped from arguing the validity of the POA.*

Finally, Masonic argues Wiley is estopped from arguing the validity of the POA because Wiley signed the optional ADR agreement with the understanding that she had authority under the POA. Masonic asserts it accepted and relied on Wiley's good faith belief that she was Blair's agent. *See* KRS 457.140 (requiring an agent to act in the principal's best interest, in good faith, and only within the scope of authority granted by the POA). However, Masonic's argument fails because it cannot prove a material misrepresentation by Wiley or Blair in signing the optional ADR agreement.

"[E]quitable estoppel requires both a material misrepresentation by one party and reliance by the other party." *Ping*, 376 S.W.3d at 595 (citing *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010)). Masonic relied on Wiley's signature and understanding that she was Blair's agent because Masonic admitted Blair into its facility for care. Although, the ADR agreement was not a mandatory document to admit Blair into the facility, Wiley signed all the documents with "POA" next to her signature.

However, Masonic cannot show that "[it] lacked the means of acquiring knowledge of the truth" that the POA was lacking the required presence of two disinterested witnesses. *LeMaster*, 306 S.W.3d at 62. A simple check of the

14

document would show that the POA did not have the witness signatures.[7]

Further, Masonic provides no evidence to suggest that Wiley engaged in "any affirmative conduct to misrepresent or conceal facts." *Id.* at 63. The issue in this case is not a matter of a fraudulent POA but the validity of a POA. Wiley is not estopped from contesting the validity of the POA.

As a result of this Court's holding that the POA is invalid, we do not need to consider the parties' arguments about the unconscionability of the arbitration agreement, or whether the wrongful death claim should be stayed pending arbitration of the other claims.

## IV.    CONCLUSION

The POA executed in 2019 was invalid because two disinterested witnesses were not present during execution as required by KRS 457.050 at the time. Further, no statute in KRS Chapter 457 retroactively applies to make the POA valid. The POA was invalid when Wiley signed Masonic's ADR agreement. Wiley thereby had no authority to enter into the ADR agreement on behalf of Blair. Thus, we reverse the Court of Appeals' decision and remand

---

[7] Masonic's failure to check the signature page of the POA also undercuts its argument that it did not have actual knowledge of the invalid POA. KRS 457.190 provides that "[a] person that in good faith accepts an acknowledged power of attorney without actual knowledge that the power of attorney is void, invalid, or terminated … may rely upon the power of attorney as if the power of attorney were genuine, valid, and still in effect." The POA was notarized but clearly lacked the required presence of two disinterested witnesses because the witness signatures were blank. Masonic having knowledge of the notary signature but not knowledge of the lack of witness signatures is unconvincing.

15

this case to the Jefferson Circuit Court for further proceedings consistent with this Opinion.

All sitting. All concur.


COUNSEL FOR APPELLANTS:

Chadwick Neal Gardner
John Carl Grey, II
Gardner Law, PLLC


COUNSEL FOR APPELLEE:

Darryl W. Durham
Brian Keith Saksefski
Seiller Waterman, LLC