NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0472n.06

Nos. 10-5117, 10-5118, 10-5119

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

May 2, 2012

LEONARD GREEN, Clerk

| | |
|---|---|
| KEITH GUY, SR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| JOHN DOE, IV, # 1-45; JANE DOE, # 1-5, | ) |
| | ) |
| Plaintiffs - Appellants Cross - Appellees, | ) |
| | ) |
| REX ROE, # 1-99; RITA ROE, # 1-14, | ) |
| | ) |
| Plaintiffs - Appellees, | ) |
| | ) |
| v. | ) |
| | ) |
| LEXINGTON-FAYETTE URBAN COUNTY | ) |
| GOVERNMENT, et al., | ) |
| | ) |
| Defendants-Appellees Cross - Appellants. | ) |
| Cross-Appellants. | ) |

On Appeal from the United States District Court for the Eastern District of Kentucky

BEFORE:     BOGGS and MCKEAGUE, Circuit Judges; and GOLDSMITH, District Judge.[*]

BOGGS, Circuit Judge.  This case is an appeal from a proposed § 1983 class action brought

against Lexington-Fayette Urban County Government (LFUCG) and a number of its former officials.

Plaintiffs allege that LFUCG and its former officials failed to report sexual abuse of minors by

_____

[*]The Honorable Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Ronald Berry, who ran a publicly funded summer program called Micro-City Government, and that

the defendants continued to fund Micro-City despite knowledge of Berry's abuse. This case is one

of four class actions filed since 1998 against LFUCG and various combinations of its former

officials. The appeal is taken from three interlocutory orders issued by the district court while the

case was on remand from this court. We affirm.

### Factual and Procedural History

In this case, Keith Guy, Sr., the named plaintiff, and a proposed class of 159 members claim

that they were abused by Ronald Berry, the former head of Micro-City Government. Micro-City

Government was a summer program for disadvantaged youth in Lexington, Kentucky, operated for

almost thirty years and funded in part by LFUCG. Ronald Berry, the former head of Micro-City, is

currently incarcerated on twelve counts of third-degree sodomy for abuse of minors that took place

during his time at Micro-City. Plaintiffs allege that Berry abused minors over the period of 1969 to

1996. LFUCG and various numbers of its officials have been the target of several class actions by

this and similar putative classes. The complex procedural history of this case is as follows.

On October 15, 1998, four victims (Keith Guy Sr., Barry Demus Jr., Octavius Gillis, and

Christopher Williams)—the same four who filed criminal charges against Berry—filed the putative

class action currently on appeal (*Guy*). The complaint named only LFUCG as a defendant. The

named plaintiffs, with the exception of Guy, settled in 2000, prior to any ruling on class certification.

Two additional victims, Craig Johnson and David Jones, then moved the court to provide notice of

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

the dismissal to the putative class pursuant to Federal Rule of Civil Procedure 23(e).[1]  The district

court denied that motion, reasoning that the lawsuit had brought so much publicity that anyone who

was going to come forward to join the suit would have already done so.  Within two years of the

ruling, however, nearly 100 class members came forward.  Guy, Johnson, and Jones appealed.

Johnson and Jones settled, leaving Guy as the sole named plaintiff appealing the denial of Rule 23(e)

notice.

On May 3, 2000, a second class action was filed by Johnson, Jones, and seven John Does,

naming LFUCG and ten former LFUCG officials as defendants.  *Doe v. LFUCG*, No. 00-166-KSF

(*Doe I*).  Two years later, the named plaintiffs settled and *Doe I* was dismissed.  Rule 23(e) notice

was neither requested nor given to putative class members.

On September 25, 2002, a third class action was filed by thirty-eight John Does, naming

LFUCG and fourteen individual defendants—including the ten named in *Doe I*—as defendants.  *Doe

#1-33 v. LFUCG*, No. 02-439-JMH (*Doe II*).  The suit was dismissed in 2003 because plaintiffs'

claims were time-barred.

A fourth class action was filed by fifty-eight new John Does.  *Doe #1-44 v. LFUCG*, No. 03-

12-JMH (*Doe III*).  This case was also dismissed because plaintiffs' claims were time-barred.

_____

[1]Federal Rule of Civil Procedure 23(e) provides:
Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses
of a certified class may be settled, voluntarily dismissed, or compromised only with
the court's approval.  The following procedures apply to a proposed settlement . . .
    (1) The court must direct notice in a reasonable manner to all class members
    who would be bound by the proposal . . . .

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Concurrent with their filing of *Doe III*, its fifty-eight plaintiffs moved to intervene in *Guy* and *Doe I* pursuant to a 60(b)(4) motion,[2] arguing that the judgments in *Guy* and *Doe I* were void because Rule 23(e) notice was not served on the class members and their due-process rights were thereby violated. This action was called *Doe v. Miller*, No. 00-166-KSF. The district court denied the motion. Plaintiffs appealed this denial, along with other issues.

On May 5, 2005, in a consolidated appeal of *Guy*, *Doe I*, and *Doe v. Miller*, the Sixth Circuit vacated the judgment in *Guy*. *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 764 (6th Cir. 2005), *cert. denied*, 546 U.S. 1094 (2006). The court decided that the district court abused its discretion by refusing to provide Rule 23(e) notice to absent class members in *Guy* and *Doe I*. The court stated that "vacating the *Guy* order reaches the equitable result of allowing the Does to go forward with their case while preserving the settlement reached by the *Doe I* parties." *Ibid.* The court held that, in reopening the *Guy* case, the statutes of limitations would be tolled from the time *Guy* was filed for plaintiffs whose statutes of limitations had not already expired by the time *Guy* was filed, stating "[b]ecause *Guy* will be reopened . . . the various statutes of limitation will be considered as tolled from and after the filing of *Guy*." *Ibid.* (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983)). The Sixth Circuit did not, however, make any ruling as to

---

[2] Federal Rule of Procedure 60(b) provides:
Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
   . . .
    (4) the judgment is void[.]

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

*when* the statutes of limitations began to run for any *Guy* plaintiffs. It also did not make any rulings

as to whether any other estoppel or tolling doctrines should be applied to the statute of limitations.

The court did not vacate the judgment in *Doe I* because the settlement in *Doe I* was contingent on

the dismissal of the class action and the court declined to disturb that settlement. *Ibid.*

On remand, the district court divided plaintiffs into two separately represented groups: the

"Doe Plaintiffs" and the "Roe plaintiffs." In the amended complaint of the "Doe plaintiffs," fourteen

individuals were named as defendants, along with LFUCG. The individual defendants moved to

dismiss the amended complaint, arguing that the claims against them were barred by the statute of

limitations.

In Order #255, the district court granted defendants' motion to dismiss, ruling that the statute

of limitations on claims against LFUCG began to run at the time each plaintiff was injured by Berry.

If the plaintiff was a minor at that time, the statute began to run when he reached the age of eighteen.

KY. REV. STAT. ANN. § 413.170. All of the statutes of limitations were one year. Any statutes of

limitations that had not run by the time *Guy* was filed were tolled until the time *Guy* was reopened,

but only for claims against LFUCG, the only defendant in the *Guy* case. Similarly, claims against

individual defendants were tolled from the time of filing of *Doe I*. The court allowed individual

plaintiffs to move for clarification of the order if they believed their claims were not time-barred.

The district court clarified its order in Order #382, holding that four plaintiffs were not time-

barred with respect to their claims against LFUCG. Three of the four plaintiffs were also not time-

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

barred with respect to their claims against the individual defendants initially named in *Doe I*, and were able to proceed against those defendants.

The pertinent dates as to the timeliness of the claims of the four plaintiffs are:

| Name | Date of Birth | Date Statute of Limitations Expired | LFUCG (*Guy* filed Oct. 15, 1998) | Individual Defendants (*Doe I* filed May 3, 2000) |
|---|---|---|---|---|
| John Doe #24 | 6/23/1981 | 6/24/2000 | Not barred | Not barred |
| John Doe #33 | 10/13/1983 | 10/14/2002 | Not barred | Not barred |
| John Doe #39 | 6/5/1981 | 6/6/2000 | Not barred | Not barred |
| John Doe #45 | 11/12/1979 | 11/12/1998 | Not barred | Barred |

In a third order, Order #411, the district court denied class certification based on lack of numerosity and lack of commonality of legal and factual issues.

On appeal, plaintiffs contest Orders #255 and #411: the order granting the individual defendants' motions to dismiss and the order denying class certification. They argue that the statute of limitations should not have begun to run at the time of Berry's abuse, but at the time they learned of LFUCG's role in failing to report and continuing to fund Berry's activities. In the alternative, they argue that, even if the statute did begin running at the time of injury, tolling doctrines should operate to preserve their claims. Finally, they argue that the district court erred in denying class certification.

Defendants, as cross-appellants, contest the portions of Order #255 that allow tolling of claims against the *Doe I* defendants, and contest Order #382, which allows three plaintiffs to go forward with claims against the individual defendants. Defendants argue that the district court's

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

order was a misapplication of the class-action tolling doctrine, which requires that a class member's claims be tolled from the time of filing a class action.

This court has appellate jurisdiction over the district court's Orders #255 and #382 based on 28 U.S.C. § 1292(b), which allows for discretionary review of interlocutory orders in civil actions. The Sixth Circuit granted permission for plaintiffs and defendants to appeal the orders in this case.

This court has appellate jurisdiction over the district court's Order #411, regarding class-certification, based on Federal Rule of Civil Procedure 23(f).

We disagree with the plaintiffs' and defendants' attacks on the district court's orders. Accordingly, we affirm Order #255, Order #382, and Order #411.

<u>Order #255</u>

Three interlocutory orders in this putative class action were certified for appeal in this court. The first order, Order #255, is addressed in this section.

Order #255 held that the statute of limitations for each class member began to run at the time the individual was injured by Berry, unless the individual was a minor at that time, in which case the statute began to run when he turned eighteen. KY. REV. STAT. ANN. § 413.170. Order #255 also held that the applicable statute of limitations was one year. Order #255 declared that plaintiffs-appellants' claims were time-barred because *Guy* and *Doe I* were filed more than a year after <u>both</u> (a) the last injuries occurred and (b) the class members reached eighteen. The order left room for later clarification if any plaintiffs could prove that they had turned eighteen less than a year before

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

the action was filed. The order was indeed later clarified (in Order #382, which defendants dispute on appeal) to allow four plaintiffs to go forward with claims.

Plaintiffs argue that the district court erred in holding that their claims were time-barred. They make a number of arguments, related to commencement, estoppel, and tolling of the statute of limitations. We examine these arguments in turn.

We review a motion to dismiss on statute-of-limitations grounds de novo. *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

A

Plaintiffs do not dispute the district court's holding that § 1983 claims are governed by state personal-injury statutes of limitations, which in Kentucky are one year. *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Plaintiffs agree that the statute begins to run when "'the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). What plaintiffs do dispute is what constitutes their injury in this case.

Plaintiffs argue that their injury in this case was not the sexual abuse at the hands of Berry. Rather, they argue that the injury occurred when information was revealed that demonstrated that they had a cause of action against the LFUCG defendants, and that the statute of limitations on their claims against LFUCG did not commence until this information was revealed.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Plaintiffs argue that the district court erred by holding that the statute of limitations began running when the plaintiffs were abused, and not when they discovered that the defendants knew about and facilitated the abuse. Plaintiffs argue that because they are not suing Berry for injury, but rather LFUCG for its alleged policy or practice of not disclosing reports of Berry's abuse and continuing to fund his program, the statute of limitations should not have started running until they discovered LFUCG's policy or practice of not reporting Berry's actions and continuing funding.

The plaintiffs argue that Kentucky's delayed-discovery rule supports their position. The delayed-discovery rule states that "when an injury does not manifest itself immediately the cause of action should accrue not when the injury was initially inflicted, but when the plaintiff knew or should have known that he had been injured by the conduct of the tortfeasor." *Louisville Trust Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 500 (Ky. 1979). Delayed discovery has generally been applied to latent disease or medical-malpractice cases. *See, e.g.*, *id.* at 498 (extending the doctrine from malpractice cases to a product-liability claim where a decedent had not exhibited cancer until years after asbestos exposure). Kentucky courts have noted that the delayed-discovery doctrine has been extended several times through statute, and have relied on this in refusing to extend the doctrine any further. *See Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 & n.7 (Ky. 2010) (denying the application of the discovery rule in a personal-injury case); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 612–13 (Ky. Ct. App. 2003) (declining to extend the doctrine to a property-damage action).

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

In keeping with courts' reluctance to extend the doctrine, the delayed-discovery rule has been rejected in sexual-abuse cases, such as *Roman Catholic Diocese v. Secter*. 966 S.W.2d 286, 289–90 (Ky. Ct. App. 1998) (noting that the General Assembly had not extended the rule and that injury from sexual abuse was not latent). In doing so, the Kentucky Court of Appeals noted that it had previously declined to extend the discovery rule in another factually similar case, *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. Ct. App. 1993). The Kentucky General Assembly has not extended the discovery rule to personal-injury or sexual-abuse cases, which is consistent with Kentucky courts' reluctance to extend the doctrine to those areas.

Plaintiffs do not make a persuasive argument that the delayed-discovery rule should be applied to their case. Unlike an injury in an asbestos case or certain medical-malpractice cases, plaintiffs' injury was immediately apparent and not latent. They attempt to restyle their injury as LFUCG's failure to report Berry's abuse, but this is simply not accurate—LFUCG's failure to report Berry's abuse would not be actionable had the plaintiffs not in fact been abused by Berry. Clearly Berry's abuse is the injury that gives rise to plaintiffs' claims. Plaintiffs do not claim that their injury by Berry was latent, nor was it. Plaintiffs knew they were injured, but they simply did not know that LFUCG might be liable for their injury. This makes their case fundamentally unlike a delayed-discovery case. The district court did not err in refusing to extend the delayed-discovery rule to plaintiffs' claims.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

B

The plaintiffs next make a series of estoppel-based arguments, claiming that both the district court and the defendants are estopped from barring their claims on statute-of-limitations grounds. All of these arguments are meritless.

First, plaintiffs argue that the Sixth Circuit's prior decision in *Doe* "thoroughly addressed" statute-of-limitations issues and that the court made it "unquestionably clear" that statutes of limitations would not bar plaintiffs' claims on remand.

This argument fails. Even a moderately close reading of the Sixth Circuit's opinion reveals that the court expressly declined to reach most of the statute-of-limitations issues. The court only held that statutes of limitations would be "considered as tolled from and after the filing of *Guy*." *Doe*, 407 F.3d at 764. The court did not address the commencement of the statutes of limitations or whether any putative class members' claims would be time-barred. The court did not opine on whether any particular plaintiff's statute of limitations should be otherwise tolled. In fact, the court expressly declined to reach such issues, as foreshadowed by the following exchange at oral argument:

> Judge Cole: You're not asking that this court make any determination specifically as to when the statute of limitations accrued, just that we would reverse the District Court, send this back to the District Court . . . ?

> Mr. Morris [plaintiffs' attorney]: That's correct, Your Honor.

Plaintiffs misread the opinion when they argue that the court took a specific stance on statutes of limitations that became the "law of the case." The Sixth Circuit only held that the

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

limitations period for the *Guy* plaintiffs should be tolled from the time of the filing of *Guy*. The district court adhered to this holding on remand. There is no dispute as to whether it did so. Therefore, the district court adhered to the only law of the case that the Sixth Circuit created.

Plaintiffs next argue that the district court erred in failing to adhere to the mandate-rule doctrine. The mandate-rule doctrine states simply that "a district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). The doctrine prevents the district court from enlarging its inquiry beyond those issues remanded. *Ibid.* The doctrine is construed in light of the fact, however, that remands can be quite general in scope. *Ibid.*

There is no evidence that in issuing Order #255 the district court enlarged the scope of the remand in *Doe*. In *Doe*, the Sixth Circuit vacated the *Guy* order because it held that the court abused its discretion by not providing Rule 23(e) notice to class members. *Doe*, 407 F.3d at 763–64. It held that statutes of limitations would be considered tolled from the filing of *Guy*, but declined to decide whether statutes of limitation would be tolled by the filing of *Doe I*. *Id.* at 765. It remanded the case for the district court to consider the delayed-discovery-rule, equitable-tolling, and class-certification issues. *Id.* at 764–67. On remand, the district court has adhered to the *Doe* holding that statutes of limitation were tolled since the filing of *Guy*, and it has decided the tolling questions and the issue of class certification. Plaintiffs do not indicate how the district court has exceeded the scope of remand, nor is there evidence that the district court did so. Therefore, their argument that the district court violated the mandate-rule doctrine is without merit.

- 12 -

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

Plaintiffs next argue that the district court erred by making a statute-of-limitations ruling that contradicted its own previous ruling, thereby violating the "law of the case."[3] Plaintiffs cite an order issued in the *Doe I* case issued after a new plaintiff, "John Doe II #18," sought to intervene and take part in the class settlement. Plaintiffs claim that the district court allowed his motion to intervene, over LFUCG's objection, even though he did not file until almost four years after the claims were dismissed as time-barred in *Guy*. The intervention order has not been provided by plaintiffs. An appellant has a duty to point to the relevant parts of the record. *United States v. Santiago*, 135 F. App'x 816, 823 (6th Cir. 2005). Factual statements contained in a party's brief are not part of the record. *In re Frank Fehr Brewing Co.*, 268 F.2d 170, 183 (6th Cir. 1959). In any case, however, it is clear that the order to which plaintiffs refer is an interlocutory order from the *Doe I* class action. An interlocutory order can be changed before the district court reaches a final judgment; therefore, a court is not estopped from acting contrary to its own interlocutory order, and an interlocutory order cannot create the law of a case. *See, e.g.*, *In re Life Investors Ins. Co.*, 589 F.3d 319, 326 n.6 (6th Cir. 2009).[4] For these reasons, plaintiffs' argument must fail.

---

[3]The law-of-the-case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

[4]For example, defendants in the *Doe I* case could have brought a motion to reconsider the ruling pursuant to Federal Rule of Civil Procedure 54(b). *See* FED. R. CIV. P. 54(b) (stating that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Plaintiffs next argue that the defendants should have been barred by judicial estoppel from asserting a statute-of-limitations argument in the district court. They provide two reasons: LFUCG's arguments regarding statutes of limitations had previously failed, and LFUCG had repeatedly stated that the statute of limitations did not start running within one year of the filing of *Guy*.

The equitable doctrine of judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008) (internal quotation marks omitted). Judicial estoppel is applied cautiously, so such a later position "must be clearly inconsistent" with the party's previous position. *Ibid.* (internal quotation marks omitted). In support of their argument, plaintiffs refer to two orders that were filed by defendants and to defendants' briefing for the Sixth Circuit *Doe* appeal. Plaintiffs argue that in these documents the defendants stated that the "triggering event" for statutes of limitations was on November 20, 1997, when a newspaper article tying LFUCG to Berry's Micro-City Government was published. If November 20, 1997, was the trigger, the filing of *Guy*, on October 15, 1998, would be less than one year from this date, and plaintiffs' claims would not be barred by the one-year statute of limitations.

The primary problem with plaintiffs' argument is that, even if defendants made inconsistent arguments in these orders, which they contest on appeal (by arguing that they stated that November

F. App'x 949, 959 & n.7 (6th Cir. 2004) (discussing a court's options for reconsidering an interlocutory order).

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

20, 1997 was the latest date possible for any *tolling*, rather than for the accrual, of claims), the district court did not adopt such inconsistent argument. The district court has consistently held that plaintiffs' claims accrued at the time of their injury by Berry. Therefore, the second part of the judicial-estoppel test is not met, and plaintiffs' judicial-estoppel claim fails.

C

Plaintiffs finally argue that even if the statute of limitations accrued when they were injured by Berry, and even if the court and defendants are not estopped from relying on this statute of limitations, equitable tolling should operate to extend their statutes of limitations. Plaintiffs argue that grounds exist to toll the statute of limitations from the time their cause of action accrued until they knew that LFUCG failed to report Berry's abuse and continued funding Micro-City despite knowledge of his abuse.

On remand from the Sixth Circuit decision in *Doe*, the district court made two rulings regarding tolling. First, the district court tolled the statutes of limitation for claims by putative class members against LFUCG from the time of *Guy*'s filing—October 15, 1998—as ordered by the Sixth Circuit in *Doe*. The district court tolled the statutes of limitations only for claims against LFUCG (and not the individual defendants), because LFUCG was the only defendant in *Guy*. *See, e.g.*, *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 567–68 (6th Cir. 2005) (holding that tolling does not apply to additional defendants who were not named in the class action). Second, the court tolled the statutes of limitations from the time of the filing of *Doe I*—May 13, 2000—for

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

claims filed against the ten individual defendants named in that class action. Likewise, this tolling only applied to claims made against the defendants in *Doe I*.

The district court did not apply any other tolling doctrines to plaintiffs' claims. In this appeal, plaintiffs argue that the district court erred in refusing to apply equitable tolling based on LFUCG's "fraudulent concealment." Plaintiffs' fraudulent-concealment argument is not meritless. However, plaintiffs' claims would be time-barred even if tolling based on fraudulent concealment were applied. Therefore, any error the district court may have committed in refusing to apply equitable tolling based on fraudulent concealment was harmless.

The parties agree that a federal court must borrow state statutes of limitations and tolling rules in a § 1983 action. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980) ("In § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are . . . [i]n most cases . . . binding rules of law."). Kentucky has a relevant tolling statute, which reads as follows:

> When a cause of action . . . accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

KY. REV. STAT. ANN. § 413.190(2). Kentucky courts have also held, however, that Kentucky's tolling statute is a "recognition in law" of general equitable estoppel; therefore, case law regarding equitable estoppel is also relevant. *Golden Oak Mining Co. v. Lucas*, No. 2008-CA-002148-MR, 2011 WL 2416600, at *7 (Ky. Ct. App. June 17, 2011) (internal quotation marks omitted) (quoting

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

*Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992)). The essential elements of

equitable estoppel, sometimes also called "fraudulent concealment," are:

> (1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently seeks to assert, (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Id.* at *8 (quoting *Fluke Corp.*, 306 S.W.3d at 63).

In *Secter*, a factually similar case in which the plaintiff succeeded in making a fraudulent-

concealment argument, the court affirmed the trial court's denial of the Diocese's motion for a

directed verdict on statute-of-limitations grounds after the Catholic Diocese of Covington, Kentucky,

failed to report incidents of sexual abuse by a counselor to the authorities, concealed secret files with

information about the abuse, and failed to inform students, faculty, and staff of the facts. *Secter*, 966

S.W.2d at 289–90. The Diocese argued that concealment alone was not enough to toll the statute;

the concealment had to actually deceive or mislead the potential plaintiff. *Ibid.* The court held that

the Diocese had "clearly obstructed" Secter's ability to bring a claim against it by concealing its

knowledge of the counselor's abuse and the reports brought against him. *Ibid.* The court also

emphasized that the Diocese had a legal duty to bring reports of child abuse to law enforcement, and

- 17 -

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

that violating this legal duty constituted evidence of concealment under the Kentucky tolling statute. *Ibid.* (citing KY. REV. STAT. ANN. § 413.190(2)).

Subsequent Kentucky cases have continued to recognize *Secter*, but are arguably less liberal in applying fraudulent concealment. In sexual-abuse cases factually similar to this case, the Kentucky Court of Appeals has, while recognizing the validity of the *Secter* holding, narrowed its application to situations where a plaintiff exercised reasonable care and diligence in pursuing a cause of action. *Greywolf v. Roman Catholic Diocese of Covington*, No. 2010-CA-000814-MR, 2011 WL 3361342, at *3 (Ky. Ct. App. Aug. 5, 2011). *Greywolf* held that, to toll the statute, a defendant's concealment "must hide the plaintiff's cause of action in such a manner that it cannot be discovered by the exercise of ordinary diligence." *Ibid.* The court held that media reports implicating the diocese put the plaintiff on constructive notice of its negligent hiring and entrustment, and that the plaintiff could not "remain oblivious to a cause of action when information was available that it existed"—media reports are commonly held to end any period of fraudulent concealment. *Ibid*; *see also Moyers v. Roman Catholic Bishop*, No. 2004-CA-001886-MR, 2005 WL 3116116, at *3 (Ky. Ct. App. Nov. 23, 2005); *Azerot v. Roman Catholic Bishop*, No. 2004-CA-000666-MR, 2005 WL 2899483, at *1 (Ky. Ct. App. Nov. 4, 2005) (holding that sexual-abuse victims were no longer entitled to tolling once widespread publicity revealed affiliations between the abuser and the organization they sought to hold liable). Further retreating from *per se* findings of fraudulent concealment, Kentucky courts have stated that violation of a legal duty to report does not necessarily lead to a finding of fraudulent concealment, but is only a factor in the analysis. *Anderson v. Bd. of*

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

*Educ. of Fayette Cnty.*, 616 F. Supp. 2d 662, 671 (E.D.Ky. 2009) (stating that a defendant's violation of KY. REV. STAT. ANN. § 413.190(2) did not necessarily prove fraudulent concealment). Finally, Kentucky courts have emphasized that plaintiffs are expected to make a diligent investigation of their claim. *Golden Oak*, 2011 WL 2416600, at *9 (refusing to find fraudulent concealment when landowners' well-water was tainted by a mining company that misrepresented itself to plaintiffs and failed to report accurate information).

In plaintiffs' case, even if there were a valid argument that LFUCG or its officials engaged in fraudulent concealment, the parties agree that there was local, widespread publicity surrounding LFUCG's connection with Micro-City Government in 1997. At least two newspaper articles were published in the Lexington Herald-Leader describing the affiliation between LFUCG and Micro-City Government in 1997, one on August 29 and one on September 13. The articles stated that civic groups believed that LFUCG was arguably required to have investigated claims of Berry's improper activity because Micro-City was funded locally for so many years. As in *Greywolf*, *Moyers*, and *Azerot*, any fraudulent concealment claim cognizable by the plaintiffs would have ended by the time they was put on constructive notice by these two newspaper articles. Therefore, the latest fraudulent concealment would toll the commencement of plaintiffs' statutes of limitations would be September 13, 1997. However, plaintiffs filed their complaint on October 15, 1998, more than a year after the newspaper articles putting them on notice were published. This means that plaintiffs' claims, unless they had another tolling right, such as infancy, would still be time-barred. A finding of fraudulent

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

concealment simply would not help to preserve any of plaintiffs' claims. For these reasons, the district court did not err in refusing to apply equitable tolling doctrines to plaintiffs' claims.

### Order #382

Defendants-appellees raise a single issue on appeal. They argue that the district court erred in Order #382 when it allowed three plaintiffs to go forward with their claims against the individual defendants named in the *Doe I* class action. Defendants argue that the court was wrong to apply class-action tolling to *Doe I*, because class-action tolling cannot be applied to any class action filed by a putative class other than the first class action filed by that class. Defendants are incorrect, and we affirm the district court's holding that plaintiffs' claims against the individual defendants in *Doe I* were tolled from the time of filing of *Doe I*.

The commencement of a class action tolls the applicable statute of limitations for all unnamed members of the class until certification is denied or the case is otherwise dismissed without being certified. *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53 (1974); *Crown, Cork & Seal Co.*, 462 U.S. at 354–55 (extending *American Pipe*'s tolling of the statute of limitations to those bringing individual actions after class certification is denied and those electing out of the class action to bring individual claims). The defendants argue that the Sixth Circuit has since held, though, that this "class-action tolling" only applies to the first class action filed on behalf of a putative class, citing in support of their argument *Wyser-Pratte Mgmt. Co.*, 413 F.3d 553, 567–68

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

(6th Cir. 2005); *Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001);[5] and *Andrews v. Orr*, 851 F.2d 146, 148–49 (6th Cir. 1988). The defendants have misread our holdings on this point.

*Wyser* holds that the tolling of limitations periods against a defendant by a class action would not apply to a subsequent action against a different defendant, even if the claims arise out of the same or a similar transaction. *Wyser*, 413 F.3d at 568. In short, the tolling caused by the filing of one putative class action cannot toll statutes of limitations for claims against a different defendant in a second putative class action. Similarly, *Andrews* held that "the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class." *Andrews*, 851 F.2d at 149. In other words, filing one class action will not toll the statutes of limitations on all the claims or class actions a putative class member might have; it only tolls the claims asserted in the filed class action. These holdings are consistent with the district court's Order #255 in this case. The district court did *not* hold that claims against defendants named in *Doe I*, the second class action filed, were tolled from the time of the filing of *Guy*, the first class action. Such a holding would have run afoul of *Wyser* and *Andrews*. Instead, the district court held that claims against the defendants named in *Doe I* were tolled from the time of filing of *Doe I*. The district court also held that claims against the defendants named in *Guy* were tolled from the time of filing of *Guy*. The district court merely applied class-action tolling to the two separate class

[5]*Weston* holds that the statute will not be tolled for state-law claims that could have been brought, but were not, in the original complaint. *Weston*, 265 F.3d at 368–69. Because defendants' argument addresses tolling claims against different defendants, and not state or federal claims, *Weston* is not on point.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

actions, treating them as what they were—separate class actions, filed by different plaintiffs against different defendants. This treatment is wholly consistent with our holdings, and with the policy underlying these holdings. The district court's tolling of claims against the *Doe I* defendants from the time of the *Doe I* filing was not error.[6]

### Order #411

In the final issue on appeal, plaintiffs argue that the district court erred when it issued Order #411 denying their motion for class certification. We review a district court's grant or denial of class certification for an abuse of discretion. *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Recognizing the considerable discretion the district court has in determining whether to certify a class, we defer to the district court's determination if the court applies the proper standard and if the court's decision falls within the bounds of rationally available choices given the facts and law involved in the matter. *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 613 (6th Cir. 2002). Plaintiffs in this case seek certification for a Rule 23(b)(3) class

---

[6]It is true that *Doe I* was dismissed and tolling usually applies only from the time a putative class action is filed until the time it was dismissed. *Crown, Cork*, 462 U.S. at 353–54. However, *Doe I* was dismissed because the named plaintiffs settled and Rule 23(e) notice was not sent to the putative class members. The Sixth Circuit in the *Doe* decision declined to vacate the *Doe I* judgment because to do so would disturb the *Doe I* settlement, which was contingent upon dismissal. *Doe*, 407 F.3d at 764. Because Rule 23(e) notice was not sent to the putative class members, and the Sixth Circuit held that this was error (only declining to vacate *Doe I* to preserve the settlement of the named plaintiffs), it would be inequitable to deny putative class members in *Doe I* class-action tolling. We do not believe the court envisioned this result when it declined to vacate *Doe*.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

action; therefore, they must satisfy the four requirements of Rule 23(a) as well as the test of Rule 23(b). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Federal Rule of Civil Procedure 23(a) establishes four prerequisites for class certification: (1) numerosity of parties, (2) commonality of legal and factual issues, (3) typicality of claims and defenses of the class representatives, and (4) adequacy of representation. A class must satisfy all four before it can be certified. *See* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.20 (3d ed. 2008). In this case, the district court found that plaintiffs lacked the requisite numerosity because only four class members' claims were not time-barred with regard to LFUCG, and only three were not time-barred with regard to the individual defendants. A class of twenty or fewer is usually insufficiently numerous. 5 MOORE'S FEDERAL PRACTICE at § 23.22(1)(b). We hold that the district court did not abuse its discretion in finding that plaintiffs' putative class failed on numerosity grounds. Therefore, we affirm Order #411, denying class certification.[7]

## Conclusion

For the foregoing reasons, we AFFIRM the district court's Orders # 255, #382, and #411.

---

[7]The district court further found that, even if putative class members were sufficiently numerous to justify a class action, plaintiffs' claims lacked the required commonality of legal and factual issues. We need not reach this issue.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

**MARK GOLDSMITH, District Judge, concurring.**  I concur with the majority opinion; I write separately, however, because I disagree with its analysis of equitable tolling of the statute of limitations.  Specifically, I disagree with its conclusion that "there was local, widespread publicity surrounding LFUCG's connection with Micro-City Government in 1997" sufficient to put Plaintiffs on constructive notice of their claims and stop any tolling of the statute of limitations sufficiently in advance of the filing of the claims so as to render them time-barred.  The "widespread publicity" in question consists wholly of two short newspaper articles which make no mention of the sexual abuse that is central to this matter.  I contend that these two articles, without more, are insufficient to stop the tolling of the statute of limitations.  However, because I believe that Plaintiffs have not shown that the statute of limitations was initially tolled on a theory of fraudulent concealment, my disagreement does not cause me to part ways with the majority opinion's ultimate conclusion that Plaintiffs' claims are time-barred.

The "widespread publicity" referenced by the majority opinion is actually two newspaper articles, published in the Lexington Herald-Leader on August 29, 1997 and September 13, 1997.  The articles concern a non-profit organization's hesitancy to sell a historic black theater to the City because the organization questioned whether, in light of the City's funding of Micro-City Government, the City was capable of acting in the best interests of the black community.  *See* 8/29/97 article (App'x 381); 9/13/97 article (App'x 383).  The articles refer to accusations of "improper activity" at Micro-City Government, and they quote an individual stating that the "State

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

Police and the Attorney General's office are investigating allegations connected with Micro-City

Government." 8/29/97 article (internal quotation marks omitted).

The significant information from either article is the non-profit group's statement that

LFUCG's attorneys "were arguably required by law to investigate these claims of improper activity

by an individual who heads an organization so heavily funded by local funds for so many years."

*Id*. Notably, however, the articles do not mention allegations of sexual abuse by any Micro-City

Government officials. A reader could easily have concluded that the vague references to "improper

activity" meant actions of financial impropriety, or any number of other bad acts. And, critically,

the articles do not say that LFUCG officials had knowledge of any abusive activities. Thus, the

articles would not have informed Plaintiffs that LFUCG continued funding Micro-City Government

after learning of sexual abuse by its director, Ronald Berry, a fact essential to Plaintiffs' cause of

action. As the analysis of Kentucky case law that follows demonstrates, this deficiency means that

the newspaper articles did not suspend tolling of the statute of limitations. Accordingly, the limited

publicity present in our case was not sufficient to trigger resumption of the running of the statute of

limitations.[1]

---

[1] Even setting aside the limited nature of the content of the articles, it is troubling to categorize two short newspaper articles as amounting to "widespread" publicity. Kentucky case law does not explicitly set out a standard for what is sufficient. However, at least one unpublished decision refers to the Sixth Circuit's standard in concluding that the plaintiff should be charged with knowledge due to widespread publicity. *See Moyers v. Roman Catholic Bishop of Louisville*, No. 2004-CA-001886-MR, 2005 WL 3116116, at *5 n.9 (Ky. Ct. App. Nov. 23, 2005) (citing *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722 (6th Cir. 2004)). As this Court stated in *Ball*:

[t]he rule in this Circuit is that "[w]here events receive . . . widespread publicity,

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

In *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998), the

Kentucky Court of Appeals concluded that the claim was not time-barred, notwithstanding the

plaintiff's failure to file the action within one year of reaching majority age. *See id.* at 290. Secter

was sexually abused in the 1970s by a guidance counselor at his high school, which was operated

by the Diocese. In 1992, Secter learned from television reports that the counselor had abused other

students. A criminal investigation and civil suits (including Secter's, filed in 1993) followed, and

during discovery the Diocese turned over secret archive files revealing that the Diocese had received

reports of the counselor's sexual abuse before Secter had attended the school. The trial court denied

motions for directed verdicts on the statute-of-limitations issue, and the jury returned a verdict for

Secter on his claim for negligent hiring, supervising, or retaining the counselor. *Id*. at 288. On

appeal, the state court of appeals held that the action was not time-barred, reasoning that the Diocese

> plaintiffs may be charged with knowledge of their occurrence." *Hughes v. Vanderbilt Univ*., 215 F.3d 543, 548 (6th Cir. 2000) (quotation omitted). A plaintiff is charged with constructive knowledge even when she claims that "she did not hear or read any of the media reports." *Hughes*, 215 F.3d at 548. "The relevant inquiry in [such] cases . . . is an objective one." *Id*. (citations omitted). . . . [T]he question is whether a typical person would have been aware . . . .

385 F.3d at 722 (footnotes omitted). In *Ball*, the court applied the standard to find the "widespread publicity" standard to be met where "local and national news media repeatedly covered the issue, and [a government-created health panel] publicized the progression of its study since its inception in 1992 and issued its preliminary results throughout." *Id; see also id*. (in light of the media and ongoing government reports, "[p]laintiffs should have been aware of a potential personal injury claim connected to Oak Ridge emissions or releases in 1998 or 1999 at the latest, when the [panel's] preliminary reports became available").

Given the limited nature of the media coverage here – only two short newspaper articles – I cannot conclude that the publicity here was sufficiently widespread to have put Plaintiffs on notice of anything, no matter how the content of the articles is interpreted.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

had clearly "obstructed" Secter in the prosecution of his action, within the meaning of Ky. Rev. Stat. Ann. Sec. 413.190(2), by continuing to conceal reports of the counselor's acts of abuse. 966 S.W.2d at 290. It also concluded that the concealment continued until the point when there were television reports regarding abuse of other students by the counselor, which triggered Secter's suppressed memories that he had been victimized, as well. Only at that time was it revealed that the Diocese had prior knowledge of the counselor's "propensities," leading the court to conclude that, at that point, Secter had reason to know of his potential cause of action against the Diocese. *Id.* Thus, tolling was ended when publicity put Secter on notice of facts linking a potential defendant to the acts of abuse.

The same principle is evident in *Azerot v. Roman Catholic Bishop of Louisville*, No. 2004-CA-000666-MR, 2005 WL 2899483 (Ky. Ct. App. Nov. 4, 2005), where the court affirmed the lower court's dismissal on statute-of-limitations grounds. The plaintiff was allegedly abused by his parish priest in the early 1980s. Bringing suit in May 2003 for negligent hiring and for breach of fiduciary duty for failing to protect him from the abusive priest, the plaintiff alleged that he first learned through a conversation with his mother after June 2002 that the Archdiocese "had been accused in numerous lawsuits of engaging in a pattern of conduct designed to cover up abusive conduct committed by its priests." *Id.* at *1. Both the lower court and the Kentucky Court of Appeals found the action time-barred based on suspension of tolling in April 2002 because: (i) in that month a local newspaper printed two articles "regarding the Archdiocese's alleged long-standing practice of concealing known incidents of sexual abuse of students by priests," (ii) several lawsuits against the

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Archdiocese were filed beginning in April 2002, and (iii) "pervasive new reporting" in newspaper radio, and television ensued immediately. *Id*. at *2. Again, it was widespread reporting of facts tying the potential defendant to acts of abuse that put the plaintiff on notice of his claim against a particular defendant and suspended tolling.

In *Moyers v. Roman Catholic Bishop of Louisville*, No. 2004-CA-001886-MR, 2005 WL 3116116 (Ky. Ct. App. Nov. 23, 2005), the court considered nearly the same circumstances as in *Azerot*, related to the same defendant. The plaintiff experienced abuse in 1990, stated that she learned of the church's cover-up in the summer of 2002, and filed suit in May 13, 2003. The court described the April 2002 newspaper articles mentioned in *Azerot*, noted that six additional articles describing the lawsuits against the same priest were published before May 13, 2002, and that "other news reports" had occurred on local television and radio. *Id*. at *1. The court assumed that the tolling provision in Ky. Rev. Stat. Ann. § 413.190(2) applied, but concluded that, even so, the plaintiff would only have been entitled to tolling until sometime in April 2002 because of the "widespread publicity" of "the abuse scandal." *Id*. at **4-5. Accordingly, the court affirmed the trial court's award of summary judgment to the defendant based on the statute of limitations.

In *Fayette County Board of Education. v. Maner*, No. 2007-CA-002243-MR, 2009 WL 1423966 (Ky. Ct. App. May 22, 2009), the plaintiff suffered pervasive sexual abuse by several employees of the school district in the late 1970s and early 1980s. In August 2003, she sued under § 1983, *inter alia,* for substantive due process violations. Citing *Secter*, the court concluded that

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

school officials' failure to report the abuse (the exception to Ky Rev. Stat. Ann. § 413.190's

affirmative-act requirement) constituted concealment under the tolling statute. *Id*. at *12.

Notably, the court rejected the school district's argument that, because the plaintiff knew of

her own mother's complaint related to the abuse to the superintendent around the time of the abuse,

the plaintiff was obligated to sue within a year of reaching the age of majority. *Id*. The court

explained that it was necessary for the plaintiff to know about the *pattern* of abuse by school district

employees in order for the statute of limitations to run on her § 1983 suit:

> Other than Lynne's knowledge of her own sexual abuse and her mother's reporting
> of it, the Board does not point the Court to any evidence establishing that Lynne
> knew or had reason to know of a pattern of sexual abuse of other students, including
> the reports made to Dr. Potts which may have consisted of monthly complaints of
> inappropriate contact between teachers and students; the failure to report any of these
> complaints; and the concealment of his failure to report her mother's complaint prior
> to filing her case. Thus, under *Secter* and Lynne's lack of notice of many of the facts
> necessary for a 42 U.S.C. § 1983 cause of action, Lynne[] has presented sufficient
> evidence of concealment to justify tolling the statute of limitations in this matter.

*Id*. at 12-14. Thus the lack of notice of the key fact of *pattern* of abuse led the court to conclude that

tolling was not suspended.

The last case is *Greywolf v. Roman Catholic Diocese of Covington*, No. 2010-CA-000814-

MR, 2011 WL 3361342 (Ky. Ct. App. Aug. 5, 2011), in which the plaintiff was allegedly molested

by a priest in the rectory of his church in the mid-1970s. The plaintiff filed suit in May 2002,

alleging claims for molestation, battery, negligent supervision and retention, breach of fiduciary duty,

and fraudulent misrepresentation against the Diocese. *Id*. at *1. The court concluded that the

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

Diocese concealed its knowledge of the priest's behavior in 1975 when it received a report of numerous instances of abuse, and that the plaintiff was entitled to tolling from that point. *Id*. But the court found that the tolling stopped in 1993 with the "extensive publicity" in Lexington (the plaintiff's city) concerning a sexual abuse scandal by another priest in the same Diocese at the same church at which the plaintiff was abused. *Id*. The court also noted the "substantial coverage throughout Kentucky and nationwide concerning sexual abuse scandals in the Catholic Church," and the fact that the Lexington paper had covered the civil suits of the victims of another priest in the same Diocese who had sexually abused students in a Diocese-run school. *Id*.

The Kentucky cases stand for the proposition that tolling ends when publicity puts a plaintiff on notice of facts that tie the potential defendant to the essential acts comprising the actionable wrong. In our case, however, the publicity relied on by the majority opinion does not tie LFUCG to any actionable wrong. Notice that there were investigations into unspecified "improper activities" at Micro-City Government did not put Plaintiffs on notice that LFUCG had any awareness of sexual abuse. Therefore, if it is assumed that the statute of limitations was initially tolled, the publicity in August and September 1997 did not terminate that tolling.

The majority opinion contends that there was "widespread publicity surrounding LFUCG's connection with Micro-City Government in 1997." Although the opinion does not spell out what this "connection" was, it may be referring to the funding relationship between LFUCG and Micro-City Government. However, the potential basis for a § 1983 suit against LFUCG is not that it had a mere "connection" to Micro-City Government, or even that it funded the organization – facts that

- 30 -

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban*
*County Government, et al.*

no one argues were concealed.[2]  Nor was the potential basis for suit that LFUCG funded an

organization whose leader was sexually abusive.  The potential basis for the § 1983 claim against

LFUCG was that it facilitated Berry's sexually abusive activities by continuing to fund the Micro-

City Government program *after learning about those activities*.  The two newspaper articles fall well

short of giving Plaintiffs notice of that alleged fact.

Rather than conclude that tolling did terminate, however, I conclude that it never was

triggered.  It is well established that, in order to be entitled to fraudulent-concealment tolling, a

plaintiff must show that the defendants concealed, either by an affirmative act, or by failing to act

in the face of a legal duty.  *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573-74 (Ky. 2009).  The

plaintiff bears the burden of establishing facts that would entitle him or her to tolling.  *Se. Ky. Baptist*

*Hosp., Inc. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988).

With regard to the first prong, concealment by affirmative act, a Kentucky statute provides

that "a resident of [Kentucky] who absconds or conceals himself 'or by any other indirect means

obstructs the prosecution of the action' shall not have benefit of the statute of limitation so long as

the obstruction continues."  *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992)

(citing Ky. Rev. Stat. Ann. § 413.190(2)).  As the *Emberton* court explained,

> in order to toll the limitations period, the concealment envisioned by KRS 413.190(2)
> must represent an "affirmative act" and "cannot be assumed"—i.e., it must be active,
> not passive.  *Id.*; *accord Munday*, 831 S.W.2d at 915.  For this reason, we have held

---

[2]As LFUCG's brief points out, "LFUCG's funding of MCG was public knowledge long
before [the summer of 1997]."  Second Br. of Appellees at 37.

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

> that the statute's reference to "other indirect means" of obstruction of an action still requires an act or conduct that remains "affirmatively fraudulent": "The 'other indirect means' of obstruction . . . must consist of some act or conduct which in point of fact misleads or deceives plaintiff and obstructs or prevents him from instituting his suit while he may do so." *Adams*, 249 S.W.2d at 792 (citing *Reuff–Griffin Decorating Co. v. Wilkes*, 173 Ky. 566, 191 S.W. 443, 444 (Ky. 1917)); *accord Gailor v. Alsabi*, 990 S.W.2d 597, 603 (Ky. 1999). As a result, "mere silence . . . is insufficient" and cannot support its application. *Gailor*, 990 S.W.2d at 603. . . .

299 S.W.3d at 573.

Plaintiffs have not established that LFUCG officials made any affirmative misrepresentation. Although they assert in their brief on appeal that there are "mountains of evidence that demonstrated that various individuals had reported Berry's inappropriate activities to the LFUCG Defendants," they offer no record citations to substantiate. Nor do they explain what affirmative act of concealment Defendants committed after receiving the reports of Berry's activities. The failure to support an assertion with record evidence is fatal. *See, e.g.*, *Steele v. City of Cleveland*, 375 F. App'x 536, 541 (6th Cir. 2010).

Similarly, Plaintiffs have not established that Defendants failed to act in the face of a legal duty. A Kentucky statute requires that "[a]ll individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse." *Commonwealth v. Allen*, 980 S.W.2d 278, 281 (Ky. 1998) (citing Ky. Rev. Stat. § 620.030(1)). The Kentucky Supreme Court has said of the statute that "[a]ll individuals with firsthand knowledge or reasonable cause to believe that a child is abused have a mandatory duty to report the abuse." *See Allen*, 980 S.W.2d at 281. The district court rejected the argument that Defendants had a duty to report pursuant

Nos. 10-5117, 10-5118, 10-5119
*Guy, et al. v. Lexington Fayette Urban
County Government, et al.*

to the statute, concluding that it did "not believe the evidence shows that the information conveyed to the LFUCG was so specific as to raise a duty to report under the statute at issue." Opinion of 5/1/09 at 10-11 n.8 (App'x 220-21 n.8). Before this Court, Plaintiffs offer only the non-specific "mountain of evidence" statement. Plaintiffs fail to identify any specific evidence that relevant individuals received "firsthand knowledge" or information specific enough to have "reasonable cause to believe that a child is abused." *See Allen*, 980 S.W.2d at 281. Thus, Plaintiffs have not established that a duty was triggered under the statute.

Because Plaintiffs fail to establish that there was evidence before the district court creating at least a question of fact regarding the initial tolling of the statute of limitations, I would conclude that their claims were properly found to be time-barred. Accordingly, I concur in the majority's ultimate conclusion.